Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| CASHUAL HERNÁNDEZ VARGAS<br><br>*Recurrente*<br><br><br>v.<br><br><br>DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES<br><br>*Recurrido* | TA2026RA00154 | Revisión Administrativa procedente del Departamento de Recursos Naturales y Ambientales<br><br>Querella Núm.: 25-259-ZC<br><br>Sobre: Reconsideración a la Denegatoria de la Solicitud O-NP-AKR01-MA-00013-17062024. |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de mayo de 2026.

Comparece ante nos Cashual Hernández Vargas (señor Hernández Vargas o recurrente) mediante recurso de *Solicitud de Revisión Administrativa* y solicita la revocación de la *Resolución y Notificación*[1] emitida el 4 de marzo de 2026[2] por el Departamento de Recursos Naturales y Ambientales (DRNA o agencia recurrida). En el referido dictamen, el DRNA sostuvo la *Denegatoria Autorización de Actividades en la Zona Protegida del Carso*[3] la cual denegó la *Fisiografía Cársica Solicitud de Autorización*[4] presentada por el señor Hernández Vargas por conducto del Ingeniero Carlos E. Bassat Rivera (Ing. Bassat Rivera).

Por los fundamentos expuestos a continuación, se ***confirma*** la *Resolución y Notificación* impugnada.

---

[1] Apéndice 2 del recurso de *Revisión Administrativa*.
[2] Notificada el 6 de marzo de 2025.
[3] Apéndice 3 del recurso de *Revisión Administrativa*.
[4] Apéndice 1 del recurso de *Revisión Administrativa*.

## I.

El caso de autos tuvo su génesis cuando el DRNA recibió la *Fisiografía Cársica Solicitud de Autorización* número O-NP-AKR01MA-00013-17062024 presentada por el señor Hernández Vargas por conducto del Ingeniero Carlos E. Bassat Rivera. Evaluada tal solicitud, el 16 de septiembre de 2025[5], el DRNA emitió la *Denegatoria Autorización de Actividades en la Zona Protegida del Carso* en la cual formuló las siguientes determinaciones de hechos:

1. El peticionario propone la construcción de una estructura residencial de 132.53 metros cuadrados en el Solar #6 de la parcela de catastro núm. 333-031-088-21, localizada en el Bo. Monte Grande con acceso por la Carretera PR-102, Km. 23.2, del Municipio Autónomo de Cabo Rojo.

2. Adjunto en expediente la escritura número dos (2) de compraventa suscrita el dieciocho (18) de mayo ante el Abogado y Notario Público Luis Enrique Valladares Montalvo, certifica que el Sr. Cashual Hernández Varga y Lilibeth Montañez Castro son compradores de una porción de terreno marcado como "A", con una cabida de 1.0488 cuerdas y otra porción de terreno "B" con una cabida de 0.4543 cuerdas, localizadas en el Bo. Monte Grande de la municipalidad de Cabo Rojo.

3. No hay evidencia en el expediente del número de catastro o segregación del Solar #6.

4. La parcela donde se propone realizar la construcción de la residencia se localiza en el Área de Planificación Especial Restringida del Carso y su Zona de Amortiguamiento (APE-RC-ZA), según consta en el Plan y Reglamento del Área de Planificación Especial del Carso (PRAPEC), con una cabida de 1,889.1679 metros cuadrados equivalentes a 0.929 cuerdas, según el Portal del Sistema Geográfico MIPR de la Junta de Planificación.

5. De las imágenes satelitales Google Earth Pro 2/2/2023 a 2/23/2025 se evidencia el corte, remoción de los componentes de la corteza terrestre y la construcción de una estructura residencial en terrenos de Fisiografía del Carso.

6. El Artículo 4 y 6 de la Ley Núm. 292 de 21 de agosto de 1999, conocida como "Ley para la Protección y Conservación de la Fisiografía Cársica de Puerto Rico", establece qué penalidades proceden si ocurriesen violaciones a las disposiciones de esta Ley. Además, el Tópico **1.1.10.1.a de Sanciones** del Reglamento PRAPEC.

7. El DRNA determinó que el área donde ubica esta parcela ha sido desarrollada sin los debidos permisos. El Departamento no autoriza acciones en terrenos de fisiografía del carso de forma posterior a su realización. Esta acción no exime de cumplimiento por haber realizado trabajos sin la debida autorización[6]. (Énfasis suplido).

---

[5] Notificada el 18 de septiembre de 2025.
[6] Apéndice 3 del recurso de *Revisión Administrativa*, pág. 1.

Así pues, la agencia recurrida determinó denegar la *Fisiografía Cársica Solicitud de Autorización*. Inconforme con la determinación, el 6 de octubre de 2025, el recurrente sometió una *Reconsideración a Denegatoria*[7]. Allí adujo que, para la autorización solicitada, se evaluaba si el proyecto causaba deforestación, movimientos de terreno para fines comerciales o explotaciones, fragmentación de bosques y mogotes, impermeabilización del suelo, cambios en los patrones naturales de escorrentía, canalización de cuerpos de agua, aumento de patrones de corrientes de agua y a través de sumideros, y contaminación química. Sin embargo, enfatizó que nada de eso aplicaba a la solicitud a reconsiderar, pues ésta se basaba en una sola edificación de una vivienda unifamiliar en un proyecto desarrollado con permisos finales y firmes, con infraestructura, donde solo se solicitó la autorización para construir una sola casa.

De igual manera, arguyó y sometió evidencia en cuanto a que el proyecto cumplía con el Artículo 4 de la Ley Núm. 292-1999, *infra*, pues no había extracción de roca caliza y el terreno tenía suelo fértil agrícola. Además, argumentó que en el área del proyecto no se crearían vertederos, que no existía actividad agrícola que contribuyera a la exterminación total de la vegetación del área y que no había construcción de carreteras o vías de acceso porque ya existían estatales y municipales. Por último, puntualizó que el proyecto contaba con toda la infraestructura necesaria para el uso residencial, sistema pluvial y servicios de electricidad, agua potable y sistema sanitario desde el año 2016. Así pues, el señor Hernández Vargas solicitó una vista adjudicativa para explicar la solicitud de impugnación en la referida área de zonificación especial y el comportamiento de dicho sector.

---

[7] Apéndice 3 del recurso de *Revisión Administrativa*, Anejo *Reconsideración octubre de 2025. Anejo 4.*

El 23 de octubre de 2025, se celebró la vista en su fondo y allí las partes acordaron que se acogiera la reconsideración presentada por el recurrente y se devolviera a la Secretaría Auxiliar de Planificación y Permisos para que evaluara la información nueva y pertinente que no se presentó en la solicitud original para el otorgamiento de la autorización. Así las cosas, el 27 de octubre de 2025, el Oficial Examinador Samuel Acosta Camacho (OE Acosta Camacho) emitió un informe en el cual recomendó emitir la autorización solicitada[8]. Posteriormente, dicho informe fue acogido mediante la *Resolución y Notificación*[9] emitida el 17 de noviembre de 2025[10] por el DRNA.

Por su parte, el 11 de diciembre de 2025, la agencia recurrida presentó una *Moción Solicitando Reconsideración y Aclaración del Récord Administrativo*[11]. En la misma, sostuvo que el DRNA carecía de jurisdicción para otorgar una autorización dirigida a rezonificar el Área de Planificación Especial del Carso y, en consecuencia, para modificar las actividades no contempladas en el Plan y Reglamento del Área de Planificación Especial del Carso. Además, argumentó que dicha facultad correspondía de manera exclusiva a la Junta de Planificación. Asimismo, indicó que conceder la autorización sin la evaluación previa de la Secretaría Auxiliar de Planificación y Permisos sobre los documentos presentados en la vista constituía un acto ultra vires y susceptible de generar expectativas infundadas al señor Hernández Vargas.

Evaluada tal solicitud, el 15 de diciembre de 2025, el DRNA emitió y notificó una *Resolución y Notificación*[12] en la cual acogió la moción de reconsideración. Tras un análisis sosegado del

---

[8] *Íd.*, Anejo *Resolución 25-259-ZC 20 de noviembre de 2025*, págs. 4-8.
[9] *Íd.*, pág. 1-3.
[10] Notificada el 20 de noviembre de 2025.
[11] Apéndice 3 del recurso de *Revisión Administrativa*, Anejo *Reconsideración Div. Legal DRNA*.
[12] *Íd.*, Anejo *25-259-ZC Resolución DRNA 15 de diciembre de 2025*.

expediente, el 4 de marzo de 2026[13], la agencia recurrida emitió otra *Resolución y Notificación* en la que acogió el informe de la Oficial Examinadora María V. Ortega Ramírez[14] (OE Ortega Ramírez) y las siguientes determinaciones de hechos:

1. El 16 de septiembre de 2025, el DRNA emitió una Denegatoria de Autorización de Actividades en la Zona Protegida del Carso, en el caso de autos.

2. La parte promovente de epígrafe adquirió la propiedad objeto de la solicitud de Autorización, por medio de l[a] escritura número 2 de compraventa, ante el Notario Público Luis Enrique Valladares Montalvo, otorgada el 18 de mayo de 2010, fecha posterior a la aprobación de la Ley número 292, antes citada.

3. El 6 de octubre de 2025, la parte promovente presentó una Reconsideración a Denegatoria.

4. El 23 de octubre de 2025, se celebró una vista administrativa, presidida por el Oficial Examinador, Lcdo. Samuel Acosta Camacho.

5. El 27 de octubre de 2025, el Oficial Examinador en su Informe, recomendó se emitiera la Autorización solicitada.

6. El referido Informe, es acogido en Resolución de 17 de noviembre de 2025, archivada en autos el 20 de noviembre de 2025.

7. El 11 de diciembre de 2025, la representante del Interés Público, presenta una Moción Solicitando Reconsideración y Aclaración del Récord.

Asimismo, acogió la ratificación de la denegatoria recomendada debido a la falta de jurisdicción de la agencia recurrida y la recomendación de que el señor Hernández Vargas acudiera a la Junta de Planificación a plantear su situación y solicitud.

Insatisfecho, el 1 de abril de 2026, el recurrente acudió ante este foro intermedio y le imputó al DRNA los siguientes señalamientos de error:

I. **PRIMER ERROR** - ERRÓ EL DRNA AL DENEGAR LA SOLICITUD DE PERMISO ESPECIAL SIN GARANTIZAR EL DEBIDO PROCESO DE LEY A LA PARTE RECURRENTE Y LUEGO DE EXPIRADO EL TERMINO JURISDICCIONAL DE RECONSIDERACION.

II. **SEGUNDO ERROR** - ERRÓ EL DRNA AL NO DAR LA OPORTUNIDAD PREVIAMENTE ACORDADA EN VISTA ADMINISTRATIVA DE PRESENTAR PRUEBA QUE FUNDAMENTE LA RECONSIDERACION DE LA SOLICITUD

---

[13] Notificada el 6 de marzo de 2026.
[14] Apéndice 2 del recurso de *Revisión Administrativa*, págs. 3-7.

DENEGADA VIOLANDO EL DEBIDO PROCESO DE LEY DEL RECURRENTE;

III. **TERCERO ERROR** – ERRÓ EL DRNA AL DENEGAR LA EXPEDICIÓN CONTRARIO A LA ESTIPULACIÓN CONSIGNADA EN EXPEDIENTE SIENDO ESTO UN MENOSCABO DE OBLIGACIONES CONTRACTUALES.

IV. **CUARTO ERROR** - ERRÓ EL DRNA AL DENEGAR LA SOLICITUD DE PERMISO ESPECIAL SIN DAR EL DEBIDO PROCESO DE LEY A LA PARTE RECURRENTE DE DEMOSTRAR EL CUMPLIMIENTO CON LA LEY NUM 292 DE 21 DE AGOSTO DE 1999, MEDIANTE LA VISTA ADMINISTRATIVA SOLICITADA.

El 13 de abril de 2026[15], emitimos una *Resolución* concediéndole a la agencia recurrida hasta el 1 de mayo de 2026, para que presentara su alegato en oposición. Luego de que le concediéramos una prórroga[16], el DRNA sometió su *Escrito en Cumplimiento de Orden*. En el mismo, argumentó que la denegatoria de la autorización solicitada era correcta en derecho y cónsona con la política pública dirigida a proteger el recurso no renovable del carso. Sostuvo que, conforme a la determinación emitida, la parcela donde se proponía construir la vivienda ubicaba dentro del APE-RC y de su Zona de Amortiguamiento, le aplicaban las prohibiciones dispuestas en el Reglamento Núm. 8486, *infra*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### -A-

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[17]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[18].

---

[15] Notificada el 14 de abril de 2026.
[16] Véase, entrada núm. 3 y 4 del expediente del Tribunal de Apelaciones (TA).
[17] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).
[18] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[19].

Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[20]. *Ahora bien, debemos enfatizar que, al ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. Son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones* "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" *de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado[21].*

Es por esta razón, normativa establecida por nuestro Tribunal Supremo dispone: *los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, los tribunales **no tienen que darle deferencia a la interpretación de derecho que haga una agencia** simplemente porque la ley es ambigua[22].*

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente. *Sin embargo, en cuanto a las conclusiones de derecho,*

---

[19] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[20] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).

[21] *Íd.*

[22] *Íd.*

*la misma Ley se limita a rezar que: "serán revisables en todos sus aspectos por el tribunal"*[23].

**-B-**

La Ley Núm. 292-1999, según enmendada, mejor conocida como la *"Ley para la Protección y Conservación de la Fisiografía Cársica de Puerto Rico"*[24] (Ley Núm. 292-1999), declara política pública del Estado la protección, conservación y el manejo de la fisiografía cársica de Puerto Rico[25]. De este modo, se reconoce que esta fisiografía aporta funciones esenciales para la supervivencia natural y social de la Isla, tales como "albergar una alta cantidad de especies de flora y fauna; almacenar enormes abastos de aguas subterráneas; poseer terrenos de excelente aptitud agrícola y guardar un enorme potencial recreativo y turístico atribuibles a sus cualidades naturales"[26].

En ese escenario, el Artículo 3 del estatuto define la zona cársica como las "[e]xtensiones de terreno ubicadas en el norte como franja continua, en el sur como franja descontinua, las islas de Mona, Monito, parte de Caja de Muertos y afloramientos aislados en otras partes de la isla"[27]. Por su lado, el Artículo 4 de la Ley Núm. 292-1999[28] aborda las prohibiciones y penalidades, específicamente en su inciso (a) prohíbe la "[e]xtracción, excavación y remoción de roca caliza con propósitos comerciales o de nivelación de terrenos sin una autorización del Secretario" y establece que "[n]o se otorgarán permisos simples ni exenciones para estos propósitos en la zona". Además, el inciso (f) prohíbe la "[f]ragmentación de ecosistemas de valor natural" y esclarece que "[p]or fragmentación debe entenderse dividir, separar o aislar cualquier ecosistema

---

[23] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).
[24] 12 LPRA sec. 1151 nota *et seq.*
[25] Art. 2 de la Ley Núm. 292-1999, 12 LPRA sec. 1151 nota.
[26] *Íd.*
[27] 12 LPRA sec. 1151.
[28] 12 LPRA sec. 1152.

íntegro o que al momento de aprobarse esta Ley resulte de alto valor natural, aunque hayan sido fragmentados en el pasado"[29]. Añade, también, que "[l]a separación, aislamiento y división puede darse por carreteras o caminos que atraviesen los mismos, o por restarle porciones a los ecosistemas para dedicarla a usos distintos a los del mantenimiento de sistemas naturales"[30].

Por su parte, el Art. 5 de la Ley Núm. 292-1999[31], faculta al secretario del DRNA, entre otros asuntos, para adoptar la reglamentación necesaria para implantar las disposiciones de dicha ley. En vista de ello, se aprobó el *Plan y Reglamento del Área de Planificación Especial del Carso* (PRAPEC), Reglamento Núm. 8486, aprobado el 4 de julio de 2014 (Reglamento Núm. 8486), tiene como propósito implantar la política pública establecida en la Ley Núm. 292-1999, supra. Así pues, el mismo, está dirigido a orientar el uso y desarrollo de los terrenos protegidos al considerar la realidad ecológica, social, económica y reglamentaria de su contexto.

El reglamento establece los distritos sobrepuestos de Planificación Especial Restringida del Carso (APE-RC) y de Planificación Especial de la Zona Cársica (APE-ZC), cuyo fin es reconocer las características especiales de los suelos.

Conforme al Capítulo I del Reglamento Núm. 8486, *supra*, el APE-RC se define como sigue: "área dentro de la fisiografía cársica de importantes recursos geológicos, ecosistémicos e hidrológicos que están sujetos a serios conflictos en sus usos presentes y futuros y que, por lo tanto, requiere una planificación detallada [...]". En lo pertinente, la Sección 2.1.1 del Reglamento Núm. 8486, supra, regula la expedición de autorización por el DRNA. Por ello, cualquier actividad propuesta dentro del APE-RC requiere una autorización

---

[29] *Íd.*
[30] *Íd.*
[31] 12 LPRA sec. 1153.

del DRNA para llevarse a cabo. Por su parte, las siguientes actividades no podrán recibir autorización para realizarse dentro del Área Restringida del Carso APE-RC:

a) Extracción de materiales de la corteza terrestre para propósitos comerciales o explotaciones, toda vez así lo dispone la [Ley Núm. 292-1999].
b) Creación de vertederos de desperdicios domésticos, desperdicios peligrosos o desperdicios especiales o industriales no peligrosos.
c) Actividades que tiendan a la fragmentación de ecosistemas de valor natural.
d) No se otorgarán permisos simples ni exenciones para el movimiento de la corteza terrestre para propósitos comerciales o de nivelación en la zona cársica.
e) Actividades agrícolas que tiendan a la exterminación total de la vegetación del área o que la misma implique la reducción sustancial, ya sea dentro de una misma especie, entre especies o ecosistema; uso de plaguicidas, y yerbicidas o cualquier biocida no degradable por acción biológica, química o fólica que pueda filtrarse a los acuíferos[32].

Asimismo, el reglamento dispone que las siguientes actividades están prohibidas y/o condicionadas en el Área Restringida del Carso:

1) Extracción, excavación y remoción de roca caliza con propósitos comerciales o de nivelación de terrenos sin una autorización del Secretario al amparo de la Ley Número 132 de 25 de junio de 1968, según enmendada, conocida como "Ley de Arena, Grava y Piedra", según enmendada, y su respectivo reglamento. No se otorgarán permisos simples ni exenciones para estos propósitos en la zona.
2) Creación de vertederos de desperdicios domésticos, desperdicios peligrosos o desperdicios especiales o industriales no peligrosos en la zona cársica, quedará prohibido.
3) Actividad agrícola que tienda a la exterminación total de la vegetación del área o que la misma implique la reducción sustancial, ya sea dentro de una misma especie, entre especies o ecosistema; uso de plaguicidas, yerbicidas o cualquier biocida no degradable por acción biológica, química o fólica que pueda filtrarse a los acuíferos. No obstante a lo anterior se promoverá aquella actividad agrícola que no menoscabe los recursos naturales (agricultura orgánica, agricultura ecológica). 4) Construcción de caminos, carreteras, u otras vías de acceso sin la autorización del Secretario del DRNA.
5) Construcción de infraestructura para el disfrute de áreas escénicas sin la autorización del Secretario del DRNA.
6) Fragmentación de ecosistemas de valor natural.
7) Deforestación, selectiva o total, remoción de la vegetación nativa y endémica para actividades comerciales de diseño de paisajes, y remoción de material leñoso vivo para la generación de carbón vegetal sin la debida evaluación y autorización bajo las disposiciones de la Ley Núm. 292 del 21 de agosto de 1999 y de los reglamentos que se desprendan de otras leyes y reglamentos aplicables.

---

[32] Sec. 2.1.1 del Reglamento Núm. 8486, *supra.*

8) Remoción, caza, captura, o exterminio de la fauna silvestre cuyo hábitat sea la zona cársica sin la debida autorización del Secretario del DRNA.

9) Construcción o instalación de torres o antenas para líneas de transmisión eléctrica o antenas para comunicación sin la debida autorización del Secretario bajo las disposiciones de esta Ley.

10) Creación de proyectos de ecoturismo sin la debida autorización del Secretario del DRNA[33].

El precitado inciso también puntualiza que las variaciones de construcción y los proyectos de urbanización vía excepción constituyen limitaciones en el distrito APE-RC[34]. A su vez, decreta que "[c]ualquier actividad que se proponga dentro del distrito sobrepuesto APE-RC requerirá autorización del Secretario del DRNA para realizar la misma"[35].

Finalmente, la Sección 4.4.1 del Reglamento Núm. 8486, *supra*, dispone "[q]ue en el Distrito APE-RC no se considerarán cambios a las calificaciones subyacentes a través del proceso ordinario de cambio de calificación. Se hace a través de una solicitud de enmienda al PRAPEC ante la Junta de Planificación".

### III.

El señor Hernández Vargas sostuvo que el DRNA incidió al denegar la solicitud de permiso especial sin garantizarle el debido proceso de ley, particularmente, al emitir la determinación luego de expirado el término jurisdiccional de reconsideración, no permitirle presentar prueba adicional previamente acordada en la vista administrativa y resolver contrario a una alegada estipulación consignada en el expediente. Además, manifestó que la agencia recurrida le privó de la oportunidad de demostrar, mediante la vista administrativa solicitada, el cumplimiento con la Ley Núm. 292-1999, *supra*.

Por estar íntimamente relacionados los errores señalados, los discutiremos en conjunto.

---

[33] Sec. 4.1.5 del Reglamento Núm. 8486, *supra.*
[34] *Íd.*
[35] *Íd.*

Del análisis del expediente administrativo y de los argumentos esbozados por las partes en los escritos, concluimos que no se cometieron los errores señalados, veamos.

En nuestro ordenamiento jurídico y conforme a la Sección 4.5 de la Ley Núm. 38-2017, *supra*, las determinaciones de hecho de una agencia serán sostenidas si están fundamentadas en evidencia sustancial que obre en el expediente administrativo[36].

Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática[37].

En el caso de autos, el DRNA fundamentó su determinación en las disposiciones de la Ley Núm. 292-1999, *supra*, conocida como el PRAPEC. Surge del expediente administrativo que la parcela objeto de la solicitud ubica dentro del APE-RC-ZA y que en el predio se evidenciaron cortes, remoción de componentes de la corteza terrestre y construcción en terrenos de fisiografía cársica, sin la correspondiente autorización previa de la agencia recurrida.

Igualmente, la OE Ortega Ramírez concluyó que el DRNA **carecía de jurisdicción para autorizar actuaciones que implicaran, en la práctica, una rezonificación o variación incompatible con las disposiciones del PRAPEC**, pues dicha facultad le correspondía a la Junta de Planificación. A esos efectos, recomendó que cualquier solicitud de variación, consulta de ubicación o enmienda al PRAPEC fuese presentada ante dicho organismo.

Ahora bien, contrario a lo alegado por el recurrente, no advertimos violación al debido proceso de ley. El expediente reveló que el señor Hernández Vargas presentó reconsideración,

---

[36] *Rebollo v. Yiyi Motors, supra.*
[37] *Íd.*

compareció a vista administrativa y tuvo oportunidad de presentar sus argumentos ante la agencia recurrida. El mero hecho de que el DRNA finalmente acogiera la recomendación de mantener la denegatoria, no constituye, por sí solo, una actuación arbitraria ni una privación de derechos constitucionales.

Tampoco nos persuade el planteamiento de la supuesta falta de jurisdicción de la agencia recurrida para reconsiderar su determinación. Aun si asumiéramos la controversia en torno al trámite interno de reconsideración, ello no altera el hecho de que la resolución recurrida descansó en un análisis jurídico adecuado y válido al amparo de la Ley Núm. 292-1999, *supra*, y el PRAPEC.

De igual forma, la alegación sobre derechos adquiridos no obliga a la agencia recurrida a aprobar automáticamente la autorización solicitada. Es norma reiterada por el Tribunal Supremo que *el error de hecho se refiere a quien obra a base de unos hechos que no son los verdaderos. Además, se entiende que se cometió un error de hecho cuando, aun conociendo los hechos verdaderos, se produce una equivocación meramente formal o de trámite. Esto es lo que tradicionalmente se conoce como error humano*[38], lo cual no concede un derecho.

Por lo antes esbozado, concluimos que la determinación de la agencia recurrida encuentra apoyo sustancial en el expediente administrativo, responde a la política pública ambiental vigente y constituye un ejercicio razonable de la facultad delegada a la agencia recurrida para proteger los recursos cársicos del País. No habiéndose demostrado actuación arbitraria, ilegal o caprichosa, procede confirmar la resolución recurrida.

---

[38] *ELA v. Crespo Torres*, 180 DPR 776 (2009).

**IV.**

Por los fundamentos que anteceden, ***confirmamos*** la *Resolución y Notificación* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones